**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION**

| | |
|---|---|
| PETER M. BONUTTI, SIMONE K. BONUTTI, and BONUTTI HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DOEHRING, WINDERS & CO., LLP,<br>Serve: registered agent Steven M. Wente, 1601 Lafayette Ave., P.O. Box 628, Mattoon, Illinois, 61938<br><br>And<br><br>JEFFREY M. SPRACKLAN, CPA,<br>Serve: 1601 Lafayette Ave., P.O. Box 628, Mattoon, Illinois, 61938<br><br>Defendants | Cause No: |

## COMPLAINT

COME NOW Plaintiffs, Peter Bonutti, Simone K. Bonutti, and Bonutti Holdings, LLC, and for their complaint, allege:

1. Dr. Peter Bonutti is an orthopedic surgeon and entrepreneur.

2. Dr. Peter Bonutti is married to Simone Bonutti and they have six children, Mia Bonutti, Marc Bonutti, Margeaux Bonutti, Mary Bonutti, Martina Bonutti, and Michael Bonutti.

3. Dr. Bonutti, his wife and six children are citizens of the state of Florida and reside in Palm Beach, Florida.

4. Dr. Peter Bonutti hired the accounting firm of Doehring Winders & Co., LLP for providing accounting, advisory and tax preparation services for all his personal and various

1

business entities, including Bonutti Holdings, LLC along with various subsidiary entities, partnerships holdings, investment and real estate holdings, Joint Active Systems, Bonutti Research, Inc., Biomax Rehabilitation Services, Inc., Evergreen Capital Holdings, Multitak, Axiosonic, Transet, P Tech, Marc Tech, and various land trusts. as well as to prepare the tax returns for he and his six children, Mia Bonutti, Marc Bonutti, Margeaux Bonutti, Mary Bonutti, Martina Bonutti, and Michael Bonutti.

5. Doehring Winders & Co., LLP is an Illinois limited liability partnership with its principal place of business in Mattoon, Illinois. The registered agent of Doehring Winders & Co., LLP is Steven M. Wente, with the principal place of business at 1601 Lafayette Ave., P.O. Box 628, Mattoon, Illinois, 61938. Doehring Winders & Co., LLP was formed with an effective date of July 1, 1995, and it is a current Illinois limited liability partnership.

6. Doehring Winders, & Co., LLP holds itself out to providing high quality professional services, including accounting, auditing, management consulting, taxation and bookkeeping.

7. Defendant Jeffrey Spracklan was at all times acting within the scope and course of his employment and/or agency as a principal for Doehring Winders & Co., LLP.

8. Through October of 2021 Doehring Winder & Co. LLP has been the sole accounting firm used by Dr. Bonutti for both personal and business accounting, reporting, and filings.

9. Dr. Bonutti and his family at one time resided in Illinois, however, he and his family moved to Florida in 2014. Defendants filed Plaintiffs' tax returns as Illinois residents until the 2017 tax year despite Dr. Bonutti's domicile being established in Florida.

10. Jeffrey Spracklan as an agent for Doehring Winders & Co., LLP, personally met with his investment advisor at Northern Trust Company, the company handling the bulk of Dr.

Bonutti's portfolio investments, to discuss his holdings and investment plans as well as with his estate planning attorneys in Florida, to understand Dr. Bonutti's estate plan and to implement that plan. Consequently, Defendants have sufficient minimal contacts to subject them to Florida's personal jurisdiction.

11. Bonutti Holdings, LLC is a Delaware LLC and is operated by Peter Bonutti in Palm Beach, Florida. Consequently, for diversity jurisdiction Bonutti Holdings is a citizen of the states of Delaware and Florida. Bonutti Holdings, LLC under the tax laws of the United States is disregarded for tax purposes and all income flows through to Dr. Peter Bonutti individually. Bonutti Holdings, LLC has been operated by Peter Bonutti from the state of Florida since 2014.

12. Dr. Peter Bonutti was responsible for hiring Doehring Winders & Co., LLP and its employees and/or agents to prepare the tax returns for he and his wife, Simone, his entities, his Irrevocable Trust, and for his children.

13. Dr. Peter Bonutti and family, as well as his entities, moved from Illinois to Florida in 2014. Despite that, Defendants continued to file Plaintiffs' tax returns as if they were Illinois residents. It was not until 2017 that Defendant Jeffrey Spracklan filed Peter Bonutti's return as a Florida resident. As of the tax year 2014, Peter Bonutti, his wife Simone, and their six children were citizens and residents of the state of Florida. Peter Bonutti's children have been living and going to school in Florida since 2014.

14. Peter Bonutti's trusts are managed by Northern Trust, which is a large national company that manages trusts by acting as trustee, enacting investment strategies, and carrying out estate plans. Based on information provided by Jeffrey Spracklan, Northern Trust treated Peter Bonutti as a resident and citizen of the state of Illinois. Beginning in 2017, after being informed that Peter Bonutti and his family moved to Florida in 2014, the 1099s from Northern Trust began being issued to Peter Bonutti as a resident of Florida.

15.     An accountant is required to prepare tax returns with the care that a careful and prudent accountant would do under the same or similar circumstances. This duty includes obtaining consent for e-filing tax returns, filing tax returns on time, reviewing material provided by the client to properly prepare the tax returns, to properly document in working papers the source documents used to prepare the returns, to inform the client in a timely manner that the accountant lacked sufficient information to timely file a return, to inform the client if mistakes were made on the returns, e-filing only with the consent of the client, and to only undertake work for which they have the knowledge and expertise to handle. When an accountant is acting for a client pursuant to a power of attorney, the accountant should only take actions pursuant to a power of attorney that is current.

16.     Peter Bonutti is not only an orthopedic surgeon but an entrepreneur and has multiple entities and trusts. Peter Bonutti has six children and he used Defendants to prepare his children's tax returns. Sometime in 2021, Plaintiff Peter Bonutti's sister, Magda Szabo, who is a CPA in New York, began assisting Plaintiffs with their taxes. In doing so, she discovered that Peter and Simone Bonutti's 1040 for the year ended 2020 had not been filed as of the deadline of October 15, 2021. Ms. Szabo contacted Defendants who first blamed Plaintiff Peter Bonutti for not providing his K-1s. When she inquired further, she discovered that no work had been done other than filing extensions for the returns. Upon further inquiry, Ms. Szabo found that for three years Peter and Simone Bonutti's personal tax returns were filed late, as well as the returns for Peter Bonutti's other entities, and that other tax returns were without authorization. By way of example, the 1040 Form for Peter and Simone Bonutti's tax return for 2019 was e-filed on November 21st without Peter or Simone Bonutti's authorization. When Ms. Szabo inquired about this, Jeffrey Spracklan admitted that he did this claiming he had forwarded the e-filing consents to Plaintiff Dr. Peter Bonutti, but that Dr. Bonutti never returned the consents to e-file.

Dr. Peter Bonutti has no record of ever receiving the consents.

17.     One of the errors Ms. Szabo discovered involved compliance with a federal law known by the acronym FBAR. Congress passed an Act known as FBAR, which requests reporting of overseas financial accounts. Pursuant to FBAR, a United States citizen must file areturn if that person has a financial interest or assumes authority over any financial account outside the United States if the aggregate maximum exceeds $10,000 at any time during the calendar year. Pursuant to FBAR, entities that are United States persons that are disregarded for tax purposes are required to file a FBAR. The federal tax treatment of the entity does not affect the entity's requirement to file a FBAR.

18.     Financial accounts subject to FBAR includes bank accounts, such as savings accounts, checking accounts and time deposits; security accounts, such as brokerage accounts and security derivatives or other financial instruments; commodities, futures or options accounts; insurance policies with a cash value such as whole life insurance policies; mutual funds or similar pooled funding accounts.

19.     Failure to file the Form 114 to report a foreign bank account when required to do so may result in civil penalties, criminal penalties, or both. When a United States person learns that a foreign bank account should have been reported on Form 114 for a previous year, the filer is required to electronically file the delinquent return using the PSA e-filing system website. Pursuant to FBAR, there are violations and penalties for negligent violations, non-willful violations, a pattern of negligent activity, as well as penalties for willful failure to file Form 114 or obtaining records of accounts.

20.     Upon Ms. Szabo's review of the tax returns and supporting documents, she determined that the foreign bank accounts were not properly reported. Pursuant to FBAR, an annual report must be filed every April 15th.

21. Dr. Peter Bonutti has one account in Slovenia requiring annual reporting on Form 114 of a foreign bank account report. Failure to properly report triggers a $10,000 penalty. For all tax years, Defendants reported Peter Bonutti as having multiple accounts totaling approximately $1,000,000, when the accounts they reported were nothing more than interest contracts on deposits which are not subject to FBAR. As a result, the proper bank account in Slovenia was never reported, and the balance reported was approximately ten times the appropriate amount. Rather than reporting the correct bank account number each year, Defendants reported the contract numbers on the interest-bearing contracts, which are not subject to FBAR reports. Because the Slovenia bank account was never properly reported, Dr. Bonutti is exposed to potentially $60,000 in penalties. There is a reasonable cause exception to clear the penalties, but there is a cost of using a one-time penalty abatement request.

22. FATCA Form 8938 must be filed annually with Peter and Simone Bonutti's individual 1040 return and it must list out all foreign financial assets. The FATCA Form incorporates the FBAR information and if the FBAR information is incorrect, all the FATCA returns are incorrect. In addition, other financial assets, such as foreign partnership interests were not incorporated in any of the information on the FATCA Form 8938, as well as instruments such as loans to non-resident aliens were not disclosed for all years leaving Peter Bonutti exposed for all years along with interest and penalties. While it is possible to correct the form with a reasonable filing exception, here are additional costs that Dr. Bonutti will incur in addition to using the one-time penalty abatement request. In addition, if the individual tax return is late, penalties can be assessed for the Form 8938 being late.

23. In 2018, Dr. Peter Bonutti received a notice from the IRS for identity verification and provided it to Defendant Jeffrey Spracklan. Despite turning over this notice to Defendants in a timely manner, Defendants did not respond to the IRS. This resulted in the IRS freezing

approximately $250,000 of a loss carry forward. Dr. Peter Bonutti provided Defendants the notice he received from the IRS and Defendant Jeffrey Spracklan as agent for Doehring Winders told him the notice was being addressed. Ms. Szabo later learned that the notice had not been properly addressed by Defendants.

24. The IRS notice for identity verification had simply requested a response from the taxpayer (Dr. Peter Bonutti) that they received the request. All that had to be done to comply with the request was to call the number on the notice and provide the IRS the verification code on the notice. Plaintiff's sister, Magda Szabo asked the accounting firm for these notices, but they were never provided to Plaintiffs or their agents. Based on some of the records turned over, however, she found multiple errors in the tax returns.

25. Peter and Simone Bonutti's 2018 1040 Tax Return had an extension due date of October 15, 2019. During this time, Peter Bonutti received a request for identity verification from the IRS. This was forwarded to Defendants for response. All this involved was calling the IRS and providing the identity verification code on the notice and nothing more. Defendants did not respond to the notice, and instead informed Dr. Bonutti that they had identity theft, and their return could therefore not be filed. This was incorrect because all the IRS wanted to do was verify the identity. Defendants used this as a reason to delay the filing of the return past the due date of May, 2020, at which time it was paper filed. As a result of the lack of response to the notice, a $250,000 carry forward was frozen by the IRS and not applied. A large number of hours were spent clearing this up with the IRS since the verification was coming years after the request was made. In addition, because the return involved the filing of FACTA Form 8938, the IRS can assess a penalty of $10,000 for failure to file a request plus interest.

26. Peter and Simone Bonutti's 2019 1040 Tax Return was not filed on a timely basis. The return was extended, making the due date October 15, 2020. In late October of 2021, Peter

7

Bonutti contacted Jeffrey Spracklan asking for a copy of his 2020 return and he was told it had not been filed because Mr. Spracklan had been unable to get a copy of the K-1s from a broker, implying that was all that was missing. In fact, no work had been done on the 2019 1040. The Defendant Jeffrey Spracklan did not disclose that the 2019 1040 had not been filed, and instead sent a PDF of an incomplete 2020 return. He also sent a electronic copy of the 2020 1040, but did not mention that the prior year 1040 had not been filed.

27. During November of 2021, without any authorization, knowledge or consent, Defendants e-filed Peter and Simone Bonutti's 2019 1040, over a year past the extended due date. The 2019 1040 was not a return that Peter or Simone Bonutti ever reviewed or consented to filing. In fact, they were not aware that it had not been filed and found out only after their current CPA obtained e-filing dates from the prior firm. At a minimum, late filing triggers a potential $10,000 penalty for failure to file the Form 8938. In addition, as of 2019 two years of filing late returns damaged the Plaintiffs' tax profile precluding the ability to claim abatement for penalties for tax filings based on compliant tax-payer status.

28. Regarding the 2020 1040, Dr. Bonutti was told by Defendants only after the extended time to file his return had passed that Defendants lacked the capability of doing his returns. Plaintiff Peter Bonutti was told by Defendant Jeffrey Spracklan this after many returns had been filed late and neither his return, nor his children's returns had been timely filed. An accountant to act within the standard of care must have sufficient knowledge to prepare returns prior to working on them. Plaintiffs were not told of Defendants' lack of ability and knowledge until after significant damage had been sustained.

29. The 2017 Tax Act significantly changed permissible accounting methods for businesses with inventory. Previously any business with over $10,000,000 in gross receipts had to be on the accrual basis. The 2017 Tax Act increased the threshold to $25,000,000. Peter

Bonutti was eligible for change in the method on accounts from the accrual basis to the cash basis, which would have created a tax loss in that year that could have been carried back and generated a refund of at least $2,000,000. The change of method was overlooked by Defendants. When this was brought to their attention, the Defendants grossly exaggerated the gross receipts trying to claim that Peter was not eligible as he had gross receipts of over $25,000,000, which was not true. Plaintiffs' successor accountant was successful in implementing the change for 2019, however, greater savings would have been achieved if it had been implemented in 2018.

30. Defendants filed a series of grantor trust returns. None of these returns needed to be filed because Irrevocable Grantor Trusts are disregarded for tax purposes. As a result, none of the returns needed to be filed because the funds were pass through income to Plaintiffs Peter and Simone Bonutti's and should have been reported on a 1040 return, and all the fees incurred to prepare the returns for the grantor trusts was unnecessary. There were a total of six grantor trusts for which returns were filed from 2003 through 2020, which all were unnecessary and Plaintiffs Peter and Simone Bonutti were damaged in an amount equal to the payment of the fees to prepare the returns.

31. In addition, Illinois assesses a replacement tax on entities and not individuals. The net effect of filing returns unnecessarily is that a payment for Illinois replacement tax was unnecessarily incurred. Illinois does not require a state return for a grantor trust – only non-grantor trusts. All trusts at issue were for Plaintiff Peter Bonutti's grantor trusts and in 2020, the amount paid was $40,000, which was required to be paid annually since 2003.

32. Bonutti Holdings, LLC's tax return was filed late after the September 15, 2020, which is after the due date and penalties were assessed for each month the return was late. Defendants obtained a penalty abatement apparently using an expired Power of Attorney, but it

was too late at a cost to Plaintiffs Peter and Simone Bonutti of a one-time payment penalty abatement. In addition, as alleged above Bonutti Holdings is a pass through entity for tax purposes and a tax return did not need to be filed for it, this penalty was assessed on a return that never needed to be filed. In addition, because Defendants filed the request for penalty abatement without authorization, they never argued to the IRS that the return did not need to be filed and there should be no penalty abatement.

33. The six Bonutti children's tax returns for 2020 were due on April 15, 2021. Defendants failed to file an extension for these returns and therefore, the returns were filed late. The IRS assessed a penalty on the children's returns of $1,200 per child. A penalty abatement was obtained, which caused Plaintiffs to incur additional accounting fees.

34. Plaintiffs Peter and Simone Bonutti have a vineyard overseas, which can be depreciated. Defendants failed to take depreciation on Plaintiffs Peter and Simone Bonutti's 1040s. This should have been reported as an asset on Peter and Simone Bonutti's individual 1040, Schedule E, and as a result Plaintiffs Peter and Simone Bonutti failed to take a lawful deduction and unnecessarily paid taxes individually for each year Defendant prepared their 1040 return.

35. Bonutti Holdings, LLC is held by Peter Bonutti's Irrevocable Trust and Grantor Trust, which are technically disregarded for tax purposes. Bonutti Holdings, LLC had to pay the State of Illinois a replacement tax annual based on the filing, which never needed to be made. Bonutti Holdings, LLC also had to pay for tax returns that never needed to be filed. For Peter Bonutti's Irrevocable Trust, Peter Bonutti was damaged because he had to pay tax preparation fees for filings for tax returns did not need to be filed.

36. Defendants undertook the filing of Peter and Simone Bonutti's state and federal tax returns for 2017 through 2020. The tax returns were filed late for the tax returns for the years ended 2018, 2019 and 2020.

37. Defendants undertook the filing of Mia Bonutti's state and federal tax returns for the year ended 2020. The tax returns were filed late for that year.

38. Defendants undertook the filing of Marc Bonutti's state and federal tax returns for the year ended 2020. The tax return was filed late for that year.

39. Defendants undertook the filing of Margeaux Bonutti's state and federal tax returns for the year ended 2020. The tax return was filed late for that year.

40. Defendants undertook the filing of Mary Bonutti's state and federal tax returns for the year ended 2020. The tax return was filed late for that year.

41. Defendants undertook the filing of Martina Bonutti's state and federal tax returns for the year ended 2020. The tax return was filed late for that year.

42. Defendants undertook the filing of Michael Bonutti's state and federal tax returns for the year ended 2020. The tax return was filed late for that year.

## COUNT I (Accounting Malpractice)

COME NOW Plaintiffs and for Count I of Plaintiffs' Complaint, allege:

43. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 41 as if fully set out herein.

44. Defendants undertook to provide accounting and tax preparation services to Plaintiffs.

45. In doing so, Defendants have a duty to act as careful and prudent accountants and tax preparers in the same or similar circumstances.

46. As set out above, Defendants were negligent in a number of respects, including:

a) Filing the tax returns for Dr. Peter Bonutti and Simone Bonutti's children late for the tax year ended 2020 resulting in a payment penalty. This penalty was abated, however, Plaintiffs incurred fees from their accountant to obtain the abatement.

b) Reporting Bonutti Holdings, LLC as a partnership since 2003, which caused Dr. Peter Bonutti to pay an Illinois replacement tax annually, as well as the cost to prepare the return which is unnecessary since this was a pass through entity and tax returns did not need to be filed for Bonutti Holdings, LLC.

c) Allocating Bonutti Holdings, LLC's source of income to Illinois and failing to notify Northern Trust that the correct source is Florida, which is non-taxable,

d) In preparing Peter and Simone Bonutti's 2018 1040 tax returns, Defendants told Plaintiffs that they did not file the return because they had a notice of identity theft, when the notice was actual looking for identity verification, which resulted in a $250,000 loss carry forward being frozen.

e) Filing Form 114 to comply with FBAR, which overstated annually income by ten times. Foreign financial accounts have to be correctly reported and would need to be amended for a maximum of six years based on the statute of limitations.

f) Preparing FATCA Form 8938 which did not report all foreign assets that should have been incorporated in the filing. Defendants also overstated the amount and used incorrect account numbers on the return because it incorporated the incorrect foreign bank accounts reported on Form 114 and was filed late. All of the FATCA Form 8938 were filed with improper and/or missing information all years since 2011. FACTA Form 8938 requires certain foreign assets to be disclosed

and various foreign partnership interests were not incorporated on the form nor were other interest such as loans to non-resident aliens were not disclosed for all years leaving Plaintiffs exposed to interest and penalties for all years. This is a minimum $10,000 penalty for each late or incorrect filing and exposes Peter and Simone Bonutti to a $20,000 a year penalty for all open years;

g)  Filing Peter and Simone Bonutti's 2019 1040 late, resulting in a penalty;

h)  Filing Peter and Simone Bonutti's 2020 1040 late without telling them, and filing them without authorization;

i)  Filing the 1040 returns for 2020 for the Bonutti children late;

j)  Filing tax returns for all of the grantor trusts and partnership trusts, which were pass through entities and returns do not need to be filed, incurring additional filing fees and accounting fees for the preparation and filing of the return;

WHEREFORE, Plaintiffs pray for judgment against Defendants in an amount equal to:

A.  The accounting fees and filing fees that were incurred for filing unnecessary returns; penalties and interest assessed by the IRS against Plaintiffs; various problems created by Defendants; and accounting fees to obtain abatements and sort out various problems;

B.  For Plaintiffs' costs herein incurred; and

C.  For such other further relief as may in the premises be just and proper.

### **COUNT II (Breach of Contract)**

COMES NOW Plaintiffs and for Count II of their Complaint incorporates the allegations contained in paragraphs 1 through 41 as if fully set out herein.

47. Plaintiffs entered into a contract with Defendants to provide accounting and tax preparation services.

48. Implied within the contract is that Defendants complete it within the standard of care that a careful and prudent accountant under the same or similar circumstances.

49. Defendants breached the contract by:

a) Filing the tax returns for Dr. Peter Bonutti and Simone Bonutti's children late for the tax year ended 2020 resulting in a payment penalty. This penalty was abated, however, Plaintiffs incurred fees from their accountant to obtain the abatement.

b) Reporting Bonutti Holdings, LLC as a partnership since 2003, which caused Dr. Peter Bonutti to pay an Illinois replacement tax annually, as well as the cost to prepare the return which is unnecessary since this was a pass through entity and tax returns did not need to be filed for Bonutti Holdings, LLC.

c) Allocating Bonutti Holdings, LLC's source of income to Illinois and failing to notify Northern Trust that the correct source is Florida, which is non-taxable,

d) In preparing Peter and Simone Bonutti's 2018 1040 tax returns, Defendants told Plaintiffs that they did not file the return because they had a notice of identity theft, when the notice was actual looking for identity verification, which resulted in a $250,000 loss carry forward being frozen.

e) Filing Form 114 to comply with FBAR, which overstated annually income by ten times. Foreign financial accounts have to be correctly reported and would need to be amended for a maximum of six years based on the statute of limitations.

f) Preparing FATCA Form 8938 which did not report all foreign assets that should have been incorporated in the filing. Defendants also overstated the amount and used

        incorrect account numbers on the return because it incorporated the incorrect foreign bank accounts reported on Form 114 and was filed late. All of the FATCA Form 8938 were filed with improper and/or missing information all years since 2011. FACTA Form 8938 requires certain foreign assets to be disclosed and various foreign partnership interests were not incorporated on the form nor were other interest such as loans to non-resident aliens were not disclosed for all years leaving Plaintiffs exposed to interest and penalties for all years. This is a minimum $10,000 penalty for each late or incorrect filing and exposes Peter and Simone Bonutti to a $20,000 a year penalty for all open years;

g) Filing Peter and Simone Bonutti's 2019 1040 late, resulting in a penalty;

h) Filing Peter and Simone Bonutti's 2020 1040 late without telling them, and filing them without authorization;

i) Filing tax returns for all of the grantor trusts and partnership trusts, which were pass through entities and returns do not need to be filed, incurring additional filing fees and accounting fees for the preparation and filing of the return;

WHEREFORE, Plaintiffs pray for judgment against Defendants in an amount equal to:

A. The damages alleged in this Complaint in excess of $1,000,000;

D. For Plaintiffs' costs herein incurred; and

E. For such other further relief as may in the premises be just and proper.

### **COUNT III (Negligent Misrepresentation)**

COME NOW Plaintiffs and for Count III of their Complaint alleging negligent misrepresentation, allege:

50. Plaintiffs reallege the allegations in paragraphs 1 through 41 as if fully set out herein.

51. Defendants made various representations to Plaintiffs regarding the preparation of their tax returns. Their representations included that the returns had been properly filed, they were filed within the time frame requested by the IRS, they would only be filed with authorization, that they had the competence and experience to work on this type of taxpayer, and that all appropriate deductions were taken and income reported.

52. Defendants negligently represented that they had the experience and ability to prepare the tax returns for Plaintiffs and their various entities and trust, that they filed the returns on time and that they took all appropriate deductions and reported income properly, that they would only file returns with proper authorization, that on Plaintiffs' 2018 tax return the IRS reported identity theft.

53. As a result of Defendants' negligence, Plaintiffs paid taxes that were unnecessary, paid penalties and interest for late filed returns, paid fees to have tax returns prepared for entities for which returns do not have to be prepared, paid unnecessary replacement taxes, had a $250,000 loss carry forward frozen and other damages alleged herein totaling in excess of $1,000,000.

54. As a result, Plaintiffs were damaged.

WHEREFORE, Plaintiffs pray for judgment against Defendants in an amount equal to:

A. Damages in excess of $1,000,000;

D. For Plaintiffs' costs herein incurred; and

E. For such other further relief as may in the premises be just and proper.

**TEIN MALONE, PLLC**

By: */s/Allan Kaiser*
Allan B. Kaiser, # 594628
7741 SW 95th Terrace, Unit 3
Miami, FL 33156
(305) 442-1101
akaiser@teinmalone.com

and

Jeffrey J. Lowe, Mo Bar #35114
CAREY DANIS & LOWE
8235 Forsyth, Ste. 1100
St. Louis, MO 63105
(314) 725-7700
jlowe@careydanis.com

*Attorneys for Plaintiffs*

### Certificate of Filing

The undersigned hereby certifies that the foregoing Complaint has been filed by using the Court's electronic case filing system on this 17th day November, 2022.

*/s/Allan B. Kaiser*